Case No. 17-5010, Environmental Integrity Project, et al. v. E. Scott Pruitt and his official capacity as Administrator, United States Environmental Protection Agency, State of South Dakota Appellant. Mr. Seeby for the Appellant, Mr. Lundman from Appalachia, E. Scott Pruitt, and Mr. Crone for Appalachia, EIP, et al. Good morning. Good morning. Good morning, Paul Seeby on behalf of the State of North Dakota. North Dakota was erroneously excluded from the case about the future of the Solid Waste Management Program under Subtitle D of the Resource Conservation and Recovery Act, the implementation and enforcement of which has been expressly delegated by Congress to states like North Dakota. The District Court's denial of North Dakota's motion to intervene was error under recent and subsequent Supreme Court precedent, as was the Court's failure to take up North Dakota's motion to dismiss and decision to exclude the state from the negotiation of a subsequent consent decree that purports to resolve this case, a decree that we argue is inconsistent with the statute itself. Plaintiffs in the District Court and appellees here are a collection of public interest groups that sued EPA in the District Court, arguing two principal failures to perform non-discretionary duties. The complaint, though, that they filed in that case has four prayers of relief that demonstrate their case is far more than just a deadlines case or a scheduling case, namely that they make several factual allegations alleging deficiencies in several states' Solid Waste Oil and Gas Management Programs, including North Dakota's, which we contest. And the prayers for relief in the complaint sought the District Court to order EPA to proceed to rulemaking to revise the RCRA Subtitle D Oil and Gas Solid Waste Regulations and the criteria for state guidelines. That demonstrates that at the time the case was filed, it was more than just a deadlines case. Mr. Seeby, what is the procedure that the state argues was violated by entering the consent decree, the procedure that would protect North Dakota? Two things. One is that we were improperly denied intervention in the District Court to participate in that proceeding. And then the response of pleading that was filed with the motion to intervene was a motion to dismiss, which was never considered. And then, to your question, the deficiencies with the consent decree as it was finalized are that it's not consistent or authorized by the statute that it purports to implement. Tell me about that because that's what I'm curious about is what is the right that North Dakota is claiming was violated, that it seeks to or would have asserted had it been included. Right, right. And I'm going to take the assert to be related to your, this is the inverse of the IP standing. They had a right because they were trying to assert, you know, trying to get EPA to comply with the deadlines. And I take it you're not saying, no, EPA should not comply with the deadlines. What is the right that you think gives you skin in this game at this early stage? Sure. Principally, it's an omission, Judge Bullard. And the omission is that the statute itself, 6912A, talks about, A1 references the state's role in conjunction with EPA's duty to conduct rulemakings. But the rulemaking hasn't happened yet. That's right. And so their position is to the extent there's going to be a rulemaking, there's a statutory schedule for that, the consent decree enforces that, you will be able to comment, object, petition. So, exactly. So the issue is that 6912A1 talks about states as the only entity in the implementation of EPA's decision whether to engage in rulemaking, the initial one or subsequent revisions to those rules. The state is the only one that EPA is required to consult with in the development of that. And that makes perfect sense for a statute that Congress wrote to be a model of cooperative federalism where the states and the federal government work to implement these programs, which the states principally implement. This is a state implementation program. Got it. But so just to press you a little bit more on that, you may well, as a first among equals, or not even among equals, as a statutorily specified partner in this program, once EPA gets down to the consideration that it has now scheduled under this consent decree of whether updates to Schedule D regulations are required, you may be able to convince them no. So you have a seat at that table. So the question is what – nobody's excluding you from that. And there hasn't been a determination that there, in fact, needs to be any further regulation, or indeed, if the regulation is going to happen, that it won't favor North Dakota. So I'm just still trying to get at what's happened so far that you think disadvantages or impairs a right of North Dakota. Sure. Judge, the answer to your question, the direct answer to your question, is that the statute gives the state a role, with EPA required to consult with it, over whether and how to do a rulemaking. Right. So they haven't committed to doing a rulemaking. It doesn't. They committed to consider whether to do a rulemaking. We're skipping over a step, though. We're skipping over a step. Okay. If I can just get this out. EPA is required to consult with the states, including North Dakota, and we care a lot because we're the second largest oil and gas producing state in the country and have an extensive and longstanding program that's very unique and we think very effective. We want to be able to talk to EPA about that program in light of the review that the statute compels EPA to conduct at a minimum of every three years. And in the process of doing that review and consulting, which none of which is mentioned in the consent decree. So the concern is that the consent decree is different than the statute, and the difference is an omission which excludes our role in informing EPA's not only the review process through the consultation reference nowhere in the consent decree, but because that is what goes into EPA deciding under the consent decree whether to do a rulemaking at all. But if we read the consent decree to incorporate that kind of consultation as a necessary part of the decision whether to issue a new rule, then is your concern assuaged? Well, I think the problem, Judge Trunavason, is that the consent decree is an attempt to recharacterize what the statute says EPA must do, and when it doesn't do so in a complete fashion, that's the omission is where the substantive problem is. So if you read it that way, I think it's helpful. But the problem is that we should have been admitted to this case earlier, and the fact that the district court didn't do that, it did it with an asymmetrical standing test, which is an error. Nothing in Article III supports that asymmetrical standing test. For a state that has a primacy role in implementing a statute directed by Congress, having a harder time to get standing than a challenging entity that's a proponent of more regulation that's discretionary with the agency. So we think that that's an error. We should have been admitted to this case. And in fact, the Supreme Court's decision in June of this year, the town of Chester, were required to be admitted to the case because we, at the time of the district court proceeding, EPA and North Dakota were similarly situated, had the same positions, both opposing the relief sought and the standing of the plaintiffs. But that's precisely why under this circuit's precedent, which I don't take town of Chester to have dislodged, at the time you sought to intervene, your interests were being fully and adequately represented by EPA. No, that's not true. They were saying, we resist this deadline, and you were saying, yeah, we resist this deadline. We don't resist the deadline. I mean, there's no objection to what the statute compels. But isn't that all that the consent decree implements? No, that's my point, is that the consent decree does not mirror the statute. It omits the first and primary step that involves our role as a state. And so that is an error of law. The consent decree has to be, under the Supreme Court precedent, has to be consistent with the statute that it purports to implement, and this one is not. But the consent decree doesn't, it just doesn't address that issue by terms. Yeah, but that's a material flaw, is our point. Well, I don't know, because I don't know that you would read the consent decree in a way that would be inconsistent with the statute, because the consent decree just doesn't speak directly to that question. I assume that the parties that entered into the consent decree assumed that when the process of rulemaking that's contemplated by the consent decree would be taking place, that it would be done in a manner that's consistent with the statute. Well, if the consent decree was the product of North Dakota being properly admitted, which we were not, the consent decree would read differently than it does now. That's our position. It would be helpful to me. So I'm looking at the consent decree, this is the appendix 223, where it says, EPA shall either sign a notice of proposed rulemaking, or B, this is paragraph 5, B, sign a determination that revision of the regulations is not necessary. So either they're going to not do it. What paragraph are you referring to? 5 on page 223 of the appendix, and this is in the now, therefore, let it be decreed part of the consent decree, and I take this to track ordinary regulatory process. The EPA is either going to propose rulemaking, in which event North Dakota would surely have full notice and comment opportunities, or explain that it has no intention of changing the existing rules that are on the books. In either event, if North Dakota says you should change them and make them easier for us to implement, or you should not change them, in either event, that provides you notice and an opportunity. And you say, no, no, that's not enough, and that's what I'm not quite getting is why. Sure. Well, the consent decree, the section you're talking about and elsewhere, makes no reference to a piece of the statute that precedes this review process, or the rulemaking process. First of all, it omits the discussion about the review that EPA must conduct and the context and the timing and the chronology of that review, as specified in 6942A and B with respect to the regulatory guidelines for state solid waste plan. But won't that occur? I guess I'm picking up on Judge Srinivasan's question. This merely sets a deadline for the end of the process. It doesn't say that what you describe can't happen or shouldn't happen. It doesn't. You're right, Judge. It doesn't preclude those things. But our problem is that when we are a state under a statute that is a model of cooperative federalism, for that omission to occur, a selective citation to the statute over a process would only reference the tail of it, but not the process leading to it that informs it. That would be a flawed process in your view. Absolutely. If we get to the end date and that hasn't occurred, that would be an objection you would have. That's correct. And they presumably wouldn't have an answer to that, so you'd prevail. In other words, I don't know that if they don't do what you want, you're going to have a valid objection at the end of the day to whatever comes out of this if it's anything more than nothing. Possibly. And I don't see, and I think that's the district court's point too, which is just to put a date in there is not excluding you from what's going to transpire from now to then. Well, while we're on the topic about deficiencies in the consent decree, there is nothing in the statute that requires EPA to come to a formal written decision if they determine that it's not necessary to issue regulations. And now the consent decree imposes that obligation on the agency. That's another difference that is not in the statute. How does that hurt you? Well, through uncertainty in the program that we implement, if EPA is going to be sued for a final agency action, that the statute doesn't require them to reduce to writing that can be challenged by a plaintiff, there creates some regulatory uncertainty in the administration of programs that we have the primacy and implement. So that's the answer to that question, Judge. Go ahead. I'm sorry. I didn't mean to interrupt you. Go ahead. I just want to emphasize, though, that this discussion about whether the consent decree can be read in a way that's less harmful to North Dakota's cooperative federalism role under the statute is something that we should have been admitted to this case. And in fact, under the town of Chester case, we are authorized to be permitted now by the Supreme Court because our interests are in parity with EPA's at the time of this case in the district court. That's separate from the content of the consent decree. But the reason I bring this up is because if we've been properly admitted and must be now, then we have a chance to participate in the dialogue with EPA and the plaintiffs with regard to what the content of the consent decree is. And make this point, Judge Kavanaugh, about what's the problem, then, if we can't have a consent decree that spells out the statutory process? Why only have the resulting end and then see if it works out? Why not just have a consent decree that says the state shall be consulted with by EPA prior to the development and the determination of whether to conduct a rulemaking? I realize that we are confined to the administrative record and that this is not in the record, but I'm just curious about whether you've had any experience in seeking to consult with EPA under 6942 and been told, no, we can't because we have this consent decree. I can tell you my personal experience on that, Judge, and it's not in the record. It's mentioned in the briefs in the district court because before the briefing started and during our motion to intervene was pending and before EPA opposed it and the plaintiffs opposed it, we contacted EPA to have such a discussion to say, what about all of these years that we've been in consultation with EPA and you've been reviewing North Dakota's program? Because we have modified our regulations as the Bakken oil shale development has grown, waste has grown, and the need to manage those in a responsible and environmentally appropriate manner has grown, and EPA has been our partners in working through that. What about all of that dialogue, EPA? They said, well, we really can't talk about that here. We're just going to have a dialogue with the plaintiffs, and they went off and opposed our intervention, and our partnership was not respected. I'm just wondering whether that's speaking to the same issue. There's the one issue of deadline or no. This is just a... Yeah, right, which is not contested. And the way that the agency has characterized it is that that's all the consent decree is about. And so if they're saying, no, no, we're not going to hear from you or be persuaded by you, if all they're thinking they're not going to be persuaded by you about is the deadline, then that's not really a derogation of the interest that you're seeking to promote, which is when we get into the details of substantively what these solid waste rules should look like, we still want to talk. But you understand them to be closing the door even on that. That's right, because we had that dialogue. And you also mentioned you think Town of Chester makes clear that you have standing, your interests being aligned with EPA's, and I'm not quite following that. We read Town of Chester, I think, which is a unanimous case, we read it clearly to say that North Dakota need not demonstrate independent standing when we seek the same relief as a party to the case. And so my point there, Judge Pillard, is that EPA's answer to the complaint mirrors North Dakota's motion to dismiss in the district court. The objection to the plaintiff's standing, the objection to the plaintiff's claims as being barred by the statute of limitations, and a failure to state a claim upon which relief can be granted were exactly the mirror image of each other's positions at that time. And based upon that, our standing should, and even the plaintiff citizen groups, agree in this court's briefs that we have standing under the Town of Chester's decision. So at a minimum, we would ask the court remand this case to the district court to grant our intervention and to set aside the consent decree so we can have a seat at that table. So if you're taking into account your challenge with the consent decree, then the interests diverge? Well, sure, because that's later in the game, and that's after we were set aside and not allowed and so forth. But the proper assessment of our relationship with EPA's position for standing purposes is at the time that we sought to intervene, not now. We'll give you some time on rebuttal. Thank you, Judge. Good morning. May it please the Court. Robert Lundin, representing EPA Administrator Pruitt. I'll be arguing for nine minutes, and plaintiffs will be arguing for six. Under this court's case law, to intervene as a right, you have to have standing. To have standing, you have to have an injury. So the question here is, does the consent decree injure North Dakota or not? It only sets a schedule for the initial decision of whether even to go forward with the proposed rulemaking, and then another deadline if the agency decides to go forward. That schedule only does not injure North Dakota, so black standing. Town of Chester does not change the analysis in this case. In Town of Chester, the Supreme Court's holding is intervener at least has to show standing when they seek relief that is different from all the parties to the case. And what do you do with opposing counsel's point that the proper time frame for making that assessment isn't after the fact? So it may be true that now we know they seek to challenge the consent decree, and EPA obviously entered into the consent decree, so they're differently situated. But if you look back at the time when the intervention was sought, it wasn't apparent that the interests were misaligned. Well, I think Town of Chester answers that question itself. When the intervener in Town of Chester originally showed up, it appeared that maybe it was aligned with the plaintiff. Town of Chester said, well, that's not good enough. The question is, if a divergence occurs, you have to show standing then, and remanded for the lower courts to determine if that divergence had occurred and so standing was required. So I think post-consent decree, North Dakota's the only party here, only potential party here, saying there's a problem with the consent decree. They want the consent decree set aside. They're the only one asking for that relief. So at a minimum under Town of Chester, they have to show standing at that point. And we're past that point now when they can't show standing because there's no injury from the consent decree. As to the procedural right issue, they cite to 6912A, and that just does not apply to this first initial determination of review  6912A says, quote, the administrator is authorized to prescribe in consultation with federal, state, and regional authorities such regulations as are necessary to carry out his functions under this chapter. The issue here is under B of that section, which provides that the chapter shall be reviewed and, where necessary, revised, not less frequently than every three years. A1 does not require EPA to, in the initial step of deciding whether to even go forward with a proposed revision to consult with the state of North Dakota or anyone else. And I think the more central point is the court doesn't have to figure out exactly what A1 and B means because the consent decree doesn't change the terms of A1 or B in any event. There's nothing in the consent decree that rewrites those terms. The fact that A1 and B are not set forth in the decree does not mean that's a problematic omission. It just means the statute still applies as drafted. EPA, as the panel pointed out, if it fumbles this process and makes an error and then there's eventually a final action that injures North Dakota, North Dakota can surely bring that claim, but at this point there's no reason... So everything, let me just make sure I'm clear on this, everything North Dakota wants in terms of process from here forward under the statute, they're still entitled to notwithstanding the consent decree, correct? The consent decree does not change any process right North Dakota may or may not have under the statute. So if North Dakota... I think that was a yes, I'm just making sure. It's a yes. If EPA... I mean, there's two things that can happen here, or three I guess. EPA can, one, by March 2019 decide not to issue any revisions. North Dakota's not going to be injured if the existing rules stay in place. North Dakota likes the existing rules and the problem that they have with this is the potential for new rules that might result. If EPA decides to go forward with a notice of proposed rulemaking, EPA at the end of that second process, which has to occur by 2021, could decide, again, no new rules, status quo, we're sticking with what we have, we've analyzed this, we've consulted with North Dakota, we've consulted with the other interested federal and regional authorities, and we're not going to change anything. Again, no injury to North Dakota. If at that point, North Dakota, if EPA issues new regulations, North Dakota then will be in a position to challenge it, including an argument that there was a process or a consultation problem. But they can't do it now because we don't know what's going to result. All that is way too contingent to provide Article III standing. They mentioned that if there's a decision not to regulate, that has to be reduced to writing, and that's different as a result of the consent decree. Your response to that is? If EPA has to reach a decision under these provisions, it doesn't matter for any purpose whether EPA does it purely without writing any words down or writes words down. That doesn't change the legal impact of that determination. In any event, determination here just to go forward with a potential rulemaking doesn't injure them. Mr. Norman, I took Mr. Savey to be saying that they have an entitlement to consult with EPA before EPA decides whether to revise the regulations or not in respect to the triennial deadline, which has now been reinforced by the consent decree. Is that wrong? Is that informal? Does the consent decree change that? I'll take the last question first. The consent decree doesn't change any of these obligations one way or another. So if it's right or wrong, that will have to be litigated when North Dakota can say, you didn't do the thing that we say is required, which would only be down the road when we have a final rule of some sort that is actually injuring them. I don't think it's right with respect to this phase, this initial consideration of whether to propose a rulemaking. Neither the EPA nor this provision of repress, 469.12a.1, says that EPA, when deciding whether to suggest or propose a potential rule, has to consult with these parties at that stage. It's rather what the statute provides is once it's proposed a rule and before it actually prescribes the regulation, then it has the duty to consult. But we're not at that stage yet. In any event, even if we were at that stage, they'd have to wait to be injured, and then they could sue and bring this issue. And finally, EPA doesn't shut the door to North Dakota or anyone else who wants to come to them during this review phase and say, we have relevant information. Here it is. Please consider it. EPA's not going to say, no, North Dakota, we're not talking to you, or no, Environmental Integrity Project, we're not talking to you, and we're not going to consider the information you submitted. EPA will talk to folks if they have information they want to bring to the agency. We have about a minute left. Unless the court has any further questions, I think I've covered all my critical points. Okay. Thank you. Thank you. Thank you. Morning. Adam Crone for Plaintiff's Environmental Integrity Project et al. May it please the court. This case presents a question that the circuit has answered repeatedly in controlling precedent. Where a party claims injury is based on the possibility of adverse regulation, it cannot demonstrate article of freestanding or a legally protectable interest in a case that concerns only the timing and not the substance of agency rulemaking. While North Dakota advances a number of different theories to avoid this outcome, it can't get around the fact that each of its injuries is based on adverse regulation that may never come to pass and is not the subject of this case. Isn't it just the flip side of injury to EIP? I mean, for constitutional purposes, they argue that to the extent that you're pushing for potential eventual regulation beneficial to your members' interests, that they're in a parallel situation on the other side of the same coin. Yes, Your Honor. So to answer that question, North Dakota cannot claim standing just because plaintiffs can claim standing. As this court has stated, standing is not dispensed in gross. And this is because the parties themselves are different along with their injuries. While plaintiffs are actually injured now because of EPA's decades of inaction, North Dakota will be injured only if EPA actually promulgates more stringent regulations. And that will require at least like three different contingencies to occur. As Counsel for North Dakota stated, it's possible. It's possibly that EPA actually will come around to promulgating these rules. And I'll also say that this circuit has addressed this exact scenario in In re Idaho Conservation League. In that case, there were petitioners similarly situated to Environmental Integrity Project in which they had standing as their injuries actually existed. By contrast, the industry groups did not, as they would be injured only if EPA ultimately adopted the rules in question. And then I'll also say that there's a sort of sleight of hand going on in North Dakota comparing plaintiff's relief to North Dakota's injury or to put it another way, plaintiff's regressibility to North Dakota's injury. And these are different elements. Plaintiff's injury is actual and concrete right now. As Lujan stated, an injury has to be concrete, particularized, and either actual or imminent. But with regressibility, there's an inherent degree of contingency at issue. It doesn't have to be certain, but it can't be speculative. It has to be likely. And this Court has also stated that the fact that the agency actor is the one causing the injury and the only one that can resolve that injury is enough for it to be likely. On the other hand, injury, the possibility of future regulation is not enough for injury. So let's step back a bit. I will also say that the District Court correctó well, first I want to say that plaintiffs have not conceded that North Dakota should have been allowed to intervene or that North Dakota had standing before the District Court. That's incorrect, and that's not our position. But I will say that the District Court correctly applied this circuit's controlling precedent in finding that North Dakota failed to demonstrate Article III standing. As this circuit stated in Defenders of Wildlife v. Perciasepe and reaffirmed in several recent cases, Article III standing requires more than the possibility of adverse regulation. And in each of those cases over the last few years, the consent decrees were very similar to the consent decree in question. It required the agency to make certain determinations on a set timeline without dictating the substance. And the consent decree here is no different. It has binding deadlines, but it doesn't limit EPA's discretion not to conduct any rulemaking at all, not to promulgate a final rule, or as to the substance of the final rule. By contrast, each of North Dakota's injuries with respect to changing its solid waste program and as to regulatory costs is premised on EPA actually getting to that adverse regulation. As this circuit said in In re Idaho Conservation League, the consent decree merely prescribes a date by which regulation could occur. Nothing about this consent decree makes it any more likely that North Dakota will actually be subject to regulation, much less suffer concrete harm to its interests. When we're considering standing, do we look at the time at which North Dakota initially sought to intervene or at its interest now in challenging the decree? I would say, Your Honor, that for the purposes right now, we're looking at North Dakota standing at this moment. A party has to maintain standing throughout the course of litigation. So with respect to the town of Chester, for example. But then town of Chester would apply and say they need to show standing independently because their interests have now diverged from EPA's. That's correct, Your Honor. And maybe they have an interest to the very extent that they're having injury to the very extent that EPA is not taking the position that they wish they were taking. Well, the fact, Your Honor, that the relief North Dakota is seeking has diverged from EPA does not change whether or not it has an injury. That's the same. So whether or not North Dakota has standing, it's the same. The consent decree mirrors the relief the plaintiff sought. And so the standing, the injury is the same, whether or not the relief is different. What's different under town of Chester, taking it in the best light possible for North Dakota, is that the question of whether North Dakota actually had to demonstrate standing for the purposes of intervention. And I will also say that town of Chester does not change that North Dakota failed to demonstrate a legally protectable interest under Rule 24A2. And as this court held in In re Idaho Conservation League, that basically uses the same reasoning of defenders of wildlife as to injuries and applies it to legally protectable interests. Okay. Thank you very much. Thank you. Paul Seaby for the State of North Dakota on rebuttal. Appellee's attempts to evade the effect of the town of Chester case are not persuasive. At the time North Dakota filed its motion to intervene and the court denied that motion, the interests of the United States and North Dakota were aligned. If the consent decree doesn't change the statutory obligations of EPA and its relations to its Congress, congressionally authorized partners, the states, then why does the EPA and the Citizens Group object to North Dakota's participation in the resolution of an alleged failure to perform a non-discretionary duty? Mr. Seaby, if North Dakota had a right to intervene, then so too would every other state in the union, no? Well, I... And indeed so would industries regulated that deal with... No. ...subtitle D solid waste? No. And I'm glad you asked that question because it's the heart of our point here. This case is fundamentally different than Idaho Conservation League and the Perciasepe case, which we are not asking the court to disturb. Because states are different. Because states are different. The Supreme Court has very clearly said in Massachusetts v. EPA courts should afford states special solicitude. And while that has not been elaborated on extensively by the Supreme Court, it must mean in this case, because this statute gives the state a very special and primary role in implementing this statute, that since the mid-'70s, Congress said we're going to give states the primacy in administering solid waste programs, not hazardous waste that was very deliberately given that role to the EPA. It's solid waste. Right. And so this is a very special and unique circumstance. We are not asking the court to disturb your line of cases with respect to industry trade associations at all. We hear you. This case is not about dates. It's about a process and an incomplete one at that. And the omission and the incompletion is what harms us. We ask the court to return this case to the district court. We'll return the consent decree, direct the district court to administer that proceeding, and then go from there. We have a pending motion to dismiss. We'd like the district court to entertain. Pending that not being granted, we'd like to have a role in making sure that any consent decree adequately and fairly articulates the process established by Congress. Okay. Thank you. Thank you to all counsel. The case is submitted.
judges: Kavanaugh, Srinivasan, Pillard